Louis C. BUTTS et al., Plaintiffs,

v.

Wendell NICHOLS, as Chief of Police, and Richard A. Wilkey, City Manager, both of the City of Des Moines, Iowa, Defendants.

Civ. No. 72–77–2.

United States District Court,
S. D. Iowa, C. D.

Sept. 4, 1974.

———◇———

Robert C. Oberbilling, Des Moines, Iowa, for plaintiffs.

Philip T. Riley and William D. Groteluschen, Des Moines, Iowa, for defendants.

Before STEPHENSON, Circuit Judge, HANSON, Chief District Judge, and STUART, District Judge.

HANSON, Chief District Judge.

This class action challenges Section 365.17(5) of the Code of Iowa (1971), as amended July 1, 1973, which prohibits the employment of convicted felons in civil service positions in Iowa. The plaintiffs seek a declaratory judgment that Section 365.17(5) as applied in Iowa is in violation of Title VII of the Civil Rights Act of 1964 (Title 42, U.S.C., Section 2000e et seq.) and 28 C.F.R., Part 42, and is in violation of the plaintiffs' rights to Equal Protection and Due Process under the Fourteenth Amendment to the United States Constitution. The plaintiffs seek injunctive relief restraining the application of this statute to themselves and to other members of their class.

Jurisdiction of this Court is invoked pursuant to Title 42, U.S.C., Section 1983; Title 28, U.S.C., Section 1343(3); Title 42, U.S.C., Section 2000e et seq.; Title 28, U.S.C., Sections 2201 and 2202. Because plaintiffs seek to enjoin the enforcement of a state statute, a three-judge court has been convened pursuant to Title 28, U.S.C., Section 2281.

A hearing was held in this matter on November 1, 1973 before three judges.

The following constitutes the Findings of Fact, Conclusions of Law and Order for Judgment.

## FINDINGS OF FACT

Louis C. Butts is a black male convicted of a felony in 1966 in Polk County, Iowa. Plaintiff Butts worked for the City of Des Moines Police Department in the Community Service Aide Program, a federally-funded program to assist in developing police-community relations in low income areas of Des Moines. In December 1972 this program was terminated and Mr. Butts was offered and accepted employment as a sewage treatment plant helper for the City of Des Moines. Although this particular position appears to be exempt from the proscription against hiring convicted felons,[1] Mr. Butts would be prevented

---

I. Section 365.6 of the Code of Iowa (1971). as amended July 1, 1973, provides:

365.6 Applicability—exceptions.

1. The provisions of this chapter shall apply to all appointive officers and employees, including former deputy clerks and deputy bailiffs of the municipal court who became deputies of the district court clerks and sheriffs, in cities under any form of government having a population of more than fifteen thousand except:

a. City clerk, deputy city clerk, city solicitor, assistant solicitor, assessor, treasurer, auditor, civil engineer, health physician, chief of police, assistant chief of police in departments numbering more than two hundred fifty members, market master, city manager and administrative assistants to the manager.

b. Laborers whose occupation requires no special skill or fitness.

c. Election officials.

d. Secretary to the mayor or to any commissioner.

e. Commissioners of any kind.

f. Casual employees.

2. In all other cities under any form of government, the provisions of this chapter shall apply only to members of the police

from advancing to other civil service positions which cannot be filled by a convicted felon.[2]

William L. Harvey is a black male convicted of a felony in 1961 in Ottumwa, Iowa. Plaintiff Harvey was also employed by the Community Service Aide Program. Mr. Harvey's employment with the City of Des Moines was terminated with the end of the Community Service Aide Program and Mr. Harvey is no longer employed by the City of Des Moines. Mr. Harvey is, however, restricted from seeking and holding certain types of civil service employment because of his felony conviction.

John Doe is a Caucasian male who is presently an employee of the City of Des Moines, Iowa. His position has been classified by the Civil Service Commission of the City of Des Moines as a civil service position and is subject to the provisions of Section 365.17. In 1948 plaintiff Doe was convicted of a felony which would cause his discharge pursuant to Section 365.17(5) and a resolution adopted on March 21, 1972 by the Des Moines City Council directing all employees with prior felony convictions be terminated as required by Section 365.17(5) of the Code.

Defendants Wendell Nichols, Chief of Police of the City of Des Moines, Iowa, and Richard A. Wilkey, City Manager of the City of Des Moines, Iowa, are empowered by Section 365.19 of the Code to enforce the statutory provisions challenged by these plaintiffs.

Following the adoption of the Des Moines City Council resolution, this cause of action was filed and a temporary restraining order was issued. On April 11, 1972 a temporary injunction

---

and fire departments, except the following persons connected with such departments:

    a. Chiefs of police.

    b. Janitors, clerks, stenographers, secretaries.

    c. Casual employees.

The effect of this section is to remove certain jobs from civil service coverage. As a result of this removal, convicted felons can hold those jobs enumerated in Section 365.6.

2. Section 365.17 of the Code of Iowa (1971), as amended July 1, 1973, provides:

365.17 Employees under civil service— qualifications. Except as otherwise provided, no person shall be appointed or employed in any capacity in the fire or police department, or any department which is governed by the civil service, until such person shall have passed a civil service examination as provided in this chapter, and has been certified to the city council as being eligible for such appointment; provided, however, that in cases of emergency, in which the peace and order of the city is threatened by reason of fire, flood, storm, or mob violence, making additional protection of life and property necessary, in which case the person having the appointing power may deputize additional persons, without examination, to act as peace officers until such emergency shall have passed. In no case shall any person be appointed or employed in any capacity in the fire or police department, or any department which is governed by civil service, unless such person:

    1. Is a citizen of the United States and meets such other and further residence requirements as the council may by ordinance provide.

    2. Is of good moral character.

    3. Is able to read and write the English language.

    4. Is not a liquor or drug addict.

    5. Has not been convicted of a felony.

    6. Has not borne arms against the United States government.

    7. Has not claimed exemption from military service on account of being a conscientious objector.

Employees shall not be required to be a resident of the city in which they are employed, but they shall become a resident of the state at the time such appointment or employment begins and shall remain a resident of the state during employment. Cities may set reasonable maximum distances outside of the corporate limits of the city or town that policemen, firemen and other critical municipal employees may live.

issued from this Court enjoining the City of Des Moines from terminating these plaintiffs because of prior felony convictions.

One of the arguments advanced by the plaintiffs in support of their Title VII and Equal Protection claims is that Section 365.17(5) has a disproportionate racial impact in the City of Des Moines. The plaintiffs introduced statistics relating to the percentage of Des Moines City employees who are blacks,[3] the percentage of black population in the City of Des Moines,[4] and the percentage of

3.
COMPOSITE REPORT
TAKEN FROM STATE AND LOCAL GOVERNMENT
INFORMATION REPORT (EEO-4)

Filed September 30, 1973

| | | MALE | | FEMALE | | TOTAL | TOTAL | APPROXI- MATE PER- |
| | | White | Black | White | Black | EMPLOYEES | BLACK | CENTAGE |
|---|---|---|---|---|---|---|---|---|
| 1. | FINANCIAL ADMINISTRATION & GENERAL CONTROL | 122 | 6 | 65 | 4 | 197 | 10 | 5.1 |
| 2. | STREETS AND HIGHWAYS | 283 | 18 | 12 | 0 | 313 | 18 | 5.7 |
| 3. | PUBLIC WELFARE | 19 | 4 | 14 | 10 | 47 | 14 | 29.8 |
| 4. | POLICE PROTECTION | 320 | 9 | 40 | 1 | 370 | 10 | 2.7 |
| 5. | FIRE PROTECTION | 319 | 3 | 4 | 0 | 326 | 3 | .9 |
| 6. | NATURAL RESOURCES | 136 | 7 | 60 | 8 | 211 | 15 | 7.1 |
| 7. | HOSPITALS AND SANATORIUMS | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| 8. | HEALTH | 41 | 2 | 24 | 4 | 71 | 6 | 8.4 |
| 9. | HOUSING | 34 | 0 | 3 | 1 | 38 | 1 | 2.6 |
| 10. | COMMUNITY DEVELOPMENT | 30 | 3 | 9 | 5 | 47 | 8 | 17.0 |
| 11. | CORRECTIONS | 5 | 0 | 6 | 0 | 11 | 0 | 0.0 |
| 12. | UTILITIES AND TRANSPORTATION | 24 | 4 | 11 | 1 | 40 | 5 | 12.5 |
| 13. | SANITATION AND SEWAGE | 111 | 10 | 1 | 0 | 122 | 10 | 8.0 |
| 14. | EMPLOYMENT SECURITY | 20 | 7 | 12 | 25 | 64 | 32 | 50.00 |
| 15. | OTHER | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | | 1,464 | 73 | 261 | 59 | 1,857 | 132 | 7.1 |

4. Percentage of Black Population in Iowa (1970 Census):

Black population of Iowa        32.596
White population of Iowa     2,782,762
Other races             9,018

Percentage of black population to total population of the State of Iowa—1.2%

Percentage of Black Population in Des Moines, Iowa (1970 Census):

Black population of Des Moines, Iowa    11,597
Total population of Des Moines, Iowa    206,125

Percentage of black population to the total population of Des Moines, Iowa—5.62%

Source: U. S. Bureau of the Census, Statistical Abstract of the United States, 1971 (92 ed.), Washington, D. C. 1971.

those incarcerated in the Iowa State Penitentiary who are blacks.[5]

## CONCLUSIONS OF LAW

Three basic issues are presented to the Court by these plaintiffs:

A. Whether Section 365.17(5), Code of Iowa (1971), as amended (1973), which prohibits convicted felons from holding civil service positions, is illegal pursuant to Title VII of the Civil Rights Act of 1964 (Title 42, U.S.C., Section 2000e et seq.) and 28 C.F.R., Part 42.

B. Whether Section 365.17(5) of the Code, standing alone, or when read in conjunction with Section 365.6 of the Code, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

C. Whether Section 365.17(5) of the Code creates an irrebuttable presumption in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

## TITLE VII CLAIM

The black plaintiffs contend that Section 365.17(5) is in conflict with Title VII of the Civil Rights Act of 1964, in that the statute as applied discriminates against Butts, Harvey, and others similarly situated, on the basis of race and color. Title VII generally prohibits employment discrimination on the basis of race, color, religion, sex or national origin. In support of the allegations of racial discrimination, the plaintiffs cite to the Court statistics relating to the percentage of Des Moines city employees who are blacks, the percentage of black population in Des Moines and in Iowa, and the percentage of inmates of Iowa's penal institutions who are blacks.[6]

Even if these statistics were conclusive in showing de facto discrimination in employment of blacks by the City of Des Moines, this Court could not reach the merits of the Title VII claim.

Title 42, U.S.C., Section 2000e–5 contains certain jurisdictional prerequisites which require the aggrieved party to file charges with the EEOC prior to initiating suit in this Court. In Local 179, United Textile Wkrs. v. Federal Paper Stock Co., 461 F.2d 849, 850, 851 (8th Cir. 1972), the Eighth Circuit ruled:

It is now settled, however, that a complaining party must satisfy two jurisdictional prerequisites in order to bring suit under Title VII: (a) a charge must be filed with the EEOC, and (b) statutory notice from the EEOC of the right to sue must be re-

---

5. Inmate Population—Iowa Penal Institutions—End of Fiscal Year Given

| | 1972 | 1971 | 1970 |
|---|---|---|---|
| Fort Madison | 16% Black | 14% Black | 14% Black |
| Total No. of Inmates | 588 | 828 | 889 |
| Total No. of Blacks | 94 | 116 | 124 |
| Anamosa | 18% Black | 17% Black | 14% Black |
| Total No. of Inmates | 466 | 619 | 627 |
| Total No. of Blacks | 84 | 105 | 88 |
| Newton | 24% Black | 16% Black | 19% Black |
| Total No. of Inmates | 212 | 135 | 109 |
| Total No. of Blacks | 51 | 22 | 21 |
| Rockwell City | 26% Black | 16% Black | 21% Black |
| Total No. of Inmates | 40 | 75 | 75 |
| Total No. of Blacks | 10 | 12 | 16 |
| Oakdale | 14% Black | 14% Black | 16% Black |
| Total No. of Inmates | 100 | 103 | 108 |
| Total No. of Blacks | 14 | 14 | 17 |

Source: Bureau of Adult Corrections, State of Iowa

6. *See* notes 3–5, *supra.*

**578**

ceived. Robinson v. Lorillard Corp., 444 F.2d 791 (CA 4 1971); Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (CA 5 1971); Flowers v. Local No. 6, Laborers Int'l Union of North America, 431 F.2d 205 (CA 7 1970); Fekete v. United States Steel Corp., 424 F.2d 331 (CA 3 1970) and Local 186 Int'l Pulp, Sulphite and Paper Mill Workers v. Minnesota Mining and Mfg. Co., 304 F.Supp. 1284 (N.D. Ind.1969). In other words, it is clear that a person seeking redress for employment discrimination may not by-pass the EEOC and proceed directly to the federal courts. Miller v. Int'l Paper Co., 408 F.2d 283 (CA 5 1969).

In this case the plaintiffs have not pursued their remedies through the EEOC prior to commencing this suit. Accordingly, this Court cannot entertain the Title VII claims at this time.

### EQUAL PROTECTION CLAIM

The next issue before the Court is the plaintiffs' contention that Section 365.-17(5) and 365.6 of the Code of Iowa are unconstitutional as violative of their rights to Equal Protection under the Fourteenth Amendment to the Constitution of the United States. Under the statutory scheme at issue here, convicted felons are denied the opportunity to hold civil service positions by Section 365.-17(5). Section 365.6, however, exempts certain city employees *positions* from the requirements of 365.17. Thus, those convicted felons who cannot obtain a job which falls within one of the exemptions of Section 365.6, or who do not wish to hold one of those particular jobs, are in effect barred from city employment. The question before this Court is whether this discrimination against class is permissible under the Equal Protection Clause of the Fourteenth Amendment.

■ In applying equal protection analysis, the United States Supreme Court has held that where a class is discriminated against on the basis of certain suspect criteria, the State must show a compelling state interest in the statute to uphold it against the proscrip-

tions of the Equal Protection Clause. McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (Discrimination on the basis of race); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (Discrimination on the basis of race); Takahashi v. Fish & Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948) (Discrimination on the basis of alienage); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (Discrimination on the basis of alienage); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (Discrimination on the basis of illegitimacy).

The state must also show a compelling state interest if a statute discriminates against a certain class of persons where fundamental individual rights are involved. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (Right to travel); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (Right to vote); Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (Right to vote).

■ The plaintiffs, in particular the black plaintiffs, have attempted to invoke the compelling state interest test by urging that Section 365.17(5) has a disproportionate racial impact and thus discriminates on the basis of race, a suspect classification. To demonstrate an impermissible racial impact, plaintiffs have presented statistical data showing the percentage of employees in various departments of the City of Des Moines who are blacks, the percentage of black population in Des Moines and the State of Iowa, and the percentage of prisoners in the Iowa correctional institutions who are blacks. The plaintiffs argue that since the percentage of black population in the Iowa correctional institutions exceeds the percentage of black population in the City of Des Moines and in the State as a whole, any statute which discriminates against convicted felons also discriminates on the basis of race.

Upon review of plaintiffs' statistical data, it is apparent that the evidence submitted to show the de facto racial discrimination is inconclusive. Although there are several departments in the city which have a low percentage of black employees, the overall percentage of black city employees (7.1 percent) is greater than the percentage of black population in Des Moines (5.62 percent) and black population in the State (1.2 percent).

Further, the attempt to show discrimination by the percentage of blacks among the State's correctional population piles too many inferences upon each other in reaching a conclusion as to the racial impact of this statute. This record does not support the conclusion of racial discrimination, and thus plaintiffs' efforts to invoke strict scrutiny on the basis of race must fail. *See* Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974).

■ While the plaintiffs have urged other theories besides racial impact as a basis to invoke "strict scrutiny," these claims are without merit. In Upshaw v. McNamara, 435 F.2d 1188, 1190 (1st Cir. 1970), it was stated:

> We note initially that a classification based on criminal record is not a suspect classification. *See, e. g.,* Hunter v. Erickson, 393 U.S. 385, 392, 89 S. Ct. 557, 21 L.Ed.2d 616 (1969); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944); and *generally* Note, Developments in the Law—Equal Protection, 82 Harv. L.Rev. 1065, 1087–1091 (1969). Thus such a classification does not require the rigid scrutiny that suspect classifications bring forth.

In addition, although the right to seek employment is vital to all individuals as it relates to supporting themselves and their families and maintaining their self-respect and esteem, the Court can find no support in precedents at this time for a holding that the right to public employment is a fundamental right which could invoke the compelling state interest test.[7] The Court must therefore analyze this statutory prohibition against the employment of convicted felons in light of the rational basis test.

In defining the basic inquiry of the rational basis test, the United States Supreme Court has stated:

> . . . the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

■ Recent Supreme Court cases have made it quite apparent that simply discerning any legislative reason, however plausible, will not serve to satisfy the rational basis requirement. *See,* United States Department of Agriculture v. Moreno, 413 U.S. 528, 92 S.Ct. 2821, 37 L.Ed.2d 782 (1973); Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The relevant inquiry should more properly focus upon whether the means utilized to carry out a legislative purpose substantially further that end.

■ Applying the foregoing principles to the instant case, the first task is to isolate the state interest served by Section 365.17(5). As argued to this Court, that interest is basically a protective one. The defendants contend that municipal employees occupy a position of special trust, and since convicted felons have displayed their disregard for their fellow citizens, they should not be placed in a position to disregard the rights of

---

7. *See* McConnell v. Anderson, 316 F.Supp. 809, 813–815 (D.Minn.1970), rev'd, 451 F.2d 193 (8th Cir. 1971).

their fellow citizens again. In addition, the defendants contend that convicted felons do not possess the moral qualities and characteristics which are essential for public employment, and that they do not possess those habits of industry, obedience and fidelity which are essential qualifications for public employment. In essence, defendants assert that convicted felons cannot be relied upon to preserve the public trust.

The validity of these purposes is not before this Court. It is beyond dispute that such determinations of legislative interests, however wise, are the province of the legislature. Nonetheless, the means of implementing those goals are the proper subject of judicial evaluation, and in this case those means are impermissible.

There is no doubt that the State could logically prohibit and refuse employment in certain positions where the felony conviction would directly reflect on the felon's qualifications for the job (e. g., conviction of embezzlement and a job requiring the handling of large sums of money). The Iowa statutory scheme, however, has an across-the-board prohibition against the employment of felons in civil service positions. There is simply no tailoring in an effort to limit these statutes to conform to what might be legitimate state interests.

Without a more precise relationship of the means utilized by Section 365.17(5) to achieve the desired legislative end, this statute clearly violates the tenet of Equal Protection analysis that the exclusion (or inclusion) of members in a class is "necessary to achieve the articulated state goal". Kramer v. Union Free School District, No. 15, 395 U.S., 621, 632, 89 S.Ct. 1886, 1892, 23 L.Ed.2d 583 (1969). By enacting a blanket prohibition on all ex-felons, a clearly anomalous situation results. For example, persons convicted of such diverse crimes as desertion of a spouse (Section 731.1, Code of Iowa (1973)) or leading a life of lewdness (Section 724.1, Code of Iowa (1973)) would be sentenced as felons,[8] and hence would lose civil service eligibility, no matter what the nature of their job. In contrast, an individual convicted of a crime clearly involving dishonesty, such as petty larceny (Section 709.2, Code of Iowa (1973)) would not be a felon, and hence would be eligible for a number of civil service jobs wherein such "criminal propensities" would pose a threat to the public (e. g., an inspector with free access to persons' homes).

Recent court decisions have shown a particular sensitivity to the punitive effects across-the-board "felon bans" can have on individuals seeking to rehabilitate themselves, and accordingly have demanded a precision of classification which would avoid the adverse effects of statutes such as the one at issue here.[9] For example, in Otsuka v. Hite, 64 Cal. 2d 596, 611, 51 Cal.Rptr. 284, 294, 414 P.2d 412, 422 (1966), the California Supreme Court held that under the Equal Protection Clause, only those crimes involving "moral turpitude and dishonesty" warranted the disenfranchisement of a felon.[10] Similarly, the Iowa Supreme

8. Under Iowa law, a felony "is a public offense which may be punished with death, or which is, or in the discretion of the court may be, punished . . . in the penitentiary or men's reformatory." Section 687.2, Code of Iowa (1973).

9. *See generally* Note, the Need for Reform of Ex-Felon Disenfranchisement Laws, 83 Yale L.J. 580 (1974); Note, Disenfranchisement of Ex-Felons: A Reassessment, 25 Stanford L.Rev. 845 (1973); Note, The Collateral Consequences of a Criminal Conviction, 23 Vanderbilt L.Rev. 929 (1970).

10. The recent United States Supreme Court case of Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), is clearly inapplicable to the instant case. In *Richardson*, the Court upheld California's blanket disenfranchisement of convicted felons. This holding was not based upon the traditional equal protection analysis of Section 1 of the Fourteenth Amendment, however. Rather, the decision rested solely on Section 2 of that Amendment:
Representatives shall be apportioned among the several States according to their respective numbers, counting the

Court has recently held that where a past felony conviction is being used to impeach a defendant's credibility at trial, there must be some relationship shown between the felony conviction and the truth and veracity of the convicted felon. State v. Martin, 217 N.W.2d 536 (Iowa 1974).

Section 365.17(5) suffers from a total lack of such narrowing criteria. As a result, the statute is both over and under inclusive: persons who clearly could serve the public interest are denied civil service jobs, while misdemeanants convicted of crimes indicating a lack of probity suffer no disqualification. In short, no consideration is given to the nature and seriousness of the crime in relation to the job sought. The time elapsing since the conviction, the degree of the felon's rehabilitation, and the circumstances under which the crime was committed are similarly ignored.

While Section 365.17(5) alone is impermissibly arbitrary, that arbitrariness is greatly increased when the relationship of that section to Section 365.6 is considered. The incongruity results from the fact that Section 365.6 removes certain municipal jobs from the civil service requirements and, hence, from the proscription on felon employment of Section 365.17(5). Thus, a felon seeking municipal employment is barred from positions involving skilled labor or middle-level executive skills, for those jobs fall under civil service. The fact that one is a felon, however, is not a bar to the positions of city solicitor, treasurer, auditor, assessor, or city manager. By removing a number of significant city positions from civil service coverage, Section 365.6 directly contradicts defendants' "protection of the public trust" theory. The effect of Section 365.6 is to enable felons to hold the highest and lowest of municipal jobs, but not those in between. Simple logic compels the conclusion that the more important the city job, e. g., treasurer or assessor, the more available the opportunity to breach the public confidence.

It is readily apparent that when Sections 365.6 and 365.17(5) are read together, the statutory scheme suffers from defects of irrationality on two levels. First, the class defined by Section 365.17(5)—all felons—is insufficiently related to the articulated legislative purposes of that section. Second, the two groups of municipal jobs delineated by Chapter 365 are wholly unrelated to the legislative purpose of insulating felons from positions where they might be able to harm the public. As a result, a totally irrational and inconsistent scheme is

whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime,* the basis of the representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State. (Emphasis supplied.)

The Supreme Court analyzed the problem as follows:

Petitioners contend that the italicized language of § 2 expressly exempts from the sanction of that section disenfranchisement grounded on prior conviction of a felony. They go on to argue that those who framed and adopted the Fourteenth Amendment could not have intended to prohibit outright in § 1 of that Amendment that which was expressly exempted from the lesser sanction of reduced representation imposed by § 2 of the Amendment. This argument seems to us a persuasive one unless it can be shown that the language of § 2, "except for participation in rebellion, or other crime," was intended to have a different meaning than would appear from its face.

418 U.S. at 43, 94 S.Ct. at 2665. It is clear that the United States Supreme Court never reached the traditional Equal Protection analysis in the *Richardson* case when they upheld California's disenfranchisement of convicted felons. Further, Section 2 is applicable only in the voting context, and not to situations such as the availability of public employment.

created which violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See* Stephens v. Yeomans, 327 F.Supp. 1182, 1188 (D.N.J.1970).

## DUE PROCESS CLAIM

In addition to the equal protection arguments previously discussed, plaintiffs contend that Section 365.17(5) creates an irrebuttable presumption which is impermissible under the Due Process Clause of the Fourteenth Amendment.

Recent Supreme Court decisions have applied the irrebuttable presumption approach to invalidate legislative classifications similar to the one in issue here. *See* Cleveland Board of Education v. LaFluer, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The thrust of these cases has been to find a statute in violation of the Due Process Clause where a legislatively significant "fact" is presumed from a separate proven fact under a procedure denying the individual involved an opportunity to rebut the presumption. *See generally*, Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534 (1974). In this case, the proven fact of an individual's prior felony conviction would be used to conclusively presume that person's unfitness for civil service employment.

As applied by the Supreme Court, the irrebuttable presumption doctrine has served as a tool by which to measure the accuracy of various statutory classifications; it is not a mere rule of evidence.[11] Given the substantive nature of the doctrine, it is clear that removing the operative term "felon" from the statute removes the basic fact from which the conclusion of ineligibility for civil service employment is presumed. Thus,

while an irrebuttable presumption inquiry might have been appropriate had the law passed equal protection muster, this Court's removal of the felon proscription from Chapter 365 renders consideration of this issue unnecessary.

## ORDER FOR JUDGMENT

It is ordered, adjudged and decreed that this shall constitute the Findings of Fact, Conclusions of Law and that a Judgment shall be entered in accord with the above.

---

11. See Harvard Note, *supra*, at 1544–49.