Francis Craig CARLYLE, Plaintiff,

v.

Simon SITTERSON, Mayor of the City of Kinston, North Carolina, Joseph C. Taylor, City Manager, City of Kinston, Ottis Koonce, Chief, City of Kinston Fire Department, and Dudley D. Foster, James C. Ward, Frederick J. Albritton, Mansfield H. Creech, and W. C. Dortch, Councilmen, City of Kinston, Defendants.

No. 74–0038–Civ–4.

United States District Court,
D. North Carolina,
New Bern Division.

Dec. 15, 1975.

Darris W. Koonce, Trenton, N. C., for plaintiff.

Vernon H. Rochelle, of Jeffress, Hodges, Morris & Rochelle, Kinston, N. C., for defendants.

## MEMORANDUM OPINION and ORDER

LARKINS, Chief Judge:

This is a civil rights action by a former fireman employed by the City of Kinston, North Carolina, in which it is alleged that the defendants acting under color of state law dismissed him from employment in violation of rights guaranteed to him under the United States Constitution. The plaintiff is seeking both compensatory and punitive damages. Jurisdiction of this Court is allegedly invoked pursuant to Title 42, United States Code, Sections 1343, 1983, and 1985 and Title 28, United States Code, Sections 1331, 1332, and 1343.

### I.

The uncontroverted facts are as follows: On November 14, 1972, the plaintiff submitted a completed employment application to the Kinston Fire Department. He was told that no positions were available at that time but that his application would be held for future consideration. Thereafter, the defendant, Ottis Koonce, as fire chief of the City of Kinston, interviewed the plaintiff on at least two occasions and learned of his criminal record which included a conviction and imprisonment for arson. On November 23, 1973, the plaintiff was employed as a fireman with the City of Kinston and worked two full days. On November 28, 1973, Koonce, after consultation with the defendant Taylor, notified the plaintiff that his employment was terminated because of his criminal record.

Upon his discharge, the plaintiff appealed to the City Manager Taylor, Mayor Sitterson, and the City Council; however, there is substantial disagreement between the parties as to the conversations that transpired between them and as to the actual procedural relief afforded the plaintiff.

The case is presently before the Court upon the motion of the defendants to dismiss and the cross motions of the parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A hearing on these motions was held before this Court on December 3, 1975, with counsel present for all parties.

### II.

The plaintiff states that one of the statutory provisions under which he is proceeding is Title 42, United States Code, Section 1343. This Court has been unable to locate a statute so numbered in the United States Code Annotated and finds that the plaintiff is not properly before it upon such a statute.

### III.

The plaintiff is also proceeding under Title 42, United States Code, Section 1983, a part of the Civil Rights Act of 1871. A reading of that statute reveals that there are two essential elements in any cause of action under it. The first is that the defendant be acting under color of state law.

The second is that as a result of the defendant's actions, the plaintiff be deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States. It is conceded in this action that the defendants were acting under color of state law as officials of the City of Kinston. The controverted issue is instead the second element, the deprivation of a right secured under the Constitution and laws of the United States.

The plaintiff has generally alleged in his complaint a deprivation "of rights, privileges, and immunities secured to him by the Constitution and laws of the United States, and particularly his right not to be discriminated against in hiring and firing from employment and his rights to equal protection of the law." Specifically, the plaintiff alleges a deprivation of rights provided under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

#### a. Right to Continued Employment

The plaintiff contends in his Response and Motion in Opposition to Defendants' Motion to Dismiss that "his employment is a property right and a person is entitled to protection under the Fourteenth Amendment and a defendant acting under 'color of law' who interfers (sic) with this right is subject to a civil action based upon 42 U.S.C. 1983." Counsel for the plaintiff has cited numerous cases in support of the contention that there is a constitutional right to continued employment; however, a review of those cases produces no support for that contention.

 This Court has also been unable to find any support for the plaintiff's contention that he has a constitutional right to public employment in its own research. To the contrary, public office and employment are generally held not to be a property interest within the meaning of the Fourteenth Amendment. *McDowell v. Texas,* 465 F.2d 1342 (5th Cir., 1971), cert. denied 410 U.S. 943, 93 S.Ct. 1371, 35 L.Ed.2d 610 (1973), *Crawford v. City of Houston,* 386 F.Supp. 187 (S.D.Tex.1974). As the court in

*McDowell v. Texas, supra* at 1345–46 stated:

> "The right to employment by a State, in itself, is not a right secured by the Constitution or by the Laws of the United States; thus, even an invalid or an improper discharge from such an office, unaccompanied by some more precise claim of federal right than a general claim of lack of due process, is not the sort of deprivation of a right, privilege, or immunity which is secured by the Constitution of the United States or an Act of Congress providing for equal rights within the meaning of 28 U.S.C. § 1343(3)."

Under this standard, it is necessary that the plaintiff allege not only the fact of his discharge but also a resulting deprivation of a specific constitutional right before he has a constitutional right to continued employment which can be protected by this Court.

The United States Supreme Court has had ample opportunity in recent years to explore the constitutional rights of public employees. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court reversed the entry of summary judgment against a professor who alleged that his dismissal was based upon the exercise of the First Amendment right to speech. In holding that his lack of contractual or tenure right to re-employment did not defeat his claim, the Court noted:

> "For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or association, his exercise of these freedoms would in effect be penalized and inhibited."

*Perry v. Sindermann, supra* at 598, 92 S.Ct. at 2697, 33 L.Ed.2d at 577.

■ The plaintiff has alleged that the dismissal resulted in a violation of rights secured by the First and Fourth Amendments to the Constitution. Since it was not evident to the Court from the face of the pleadings and motions how the dismissal was violative of such rights, counsel for the plaintiff was asked to develop these allegations at the motion hearing held in this matter; however, counsel did not offer any further explanation. It will be assumed that there is in fact no basis for the allegations that the plaintiff was deprived of rights under the First and Fourth Amendments. Absent a supported allegation that the defendants denied the plaintiff continued employment on a basis that infringes constitutionally protected interests, the plaintiff has not alleged a violation of any constitutional right. It should be emphasized that had the plaintiff indicated that his dismissal was based upon the exercise of the right of speech, right of association, or any other specific constitutional right, he would have stated a cause of action for which relief could have been granted.

b. Right to Procedural Due Process

The plaintiff has further alleged in his Response in Opposition to Defendants' Motion to Dismiss and Summary Judgment that the right of public employees to procedural due process before being dismissed or suspended can be protected in an action under Title 42, United States Code, Section 1983. This Court will assume from this assertion that the plaintiff is alleging that his dismissal was not accompanied such notice and hearings as to meet the due process requirements of the Fourteenth Amendment.

■ Although this Court has found that the plaintiff had no constitutional right to continued employment, that decision does not control its determination with regard to whether the plaintiff possessed a right to procedural due process when his employment was terminated. The United States Supreme Court has also on several opportunities addressed itself to the area of procedural rights available to public employees. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Perry v. Sindermann, supra,* and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court has held in these cases that when interests encompassed by the Fourteenth Amendment's protection of liberty and property are abridged, the right to a hearing is paramount; however the applicability of the constitutional guarantee of due process depends in the first instance on the presence of a legitimate "property" or "liberty" interest within the meaning of the Fifth and Fourteenth Amendments.

■ The terms "liberty" and "property" are broad terms which do not lend themselves to facile definition, but if the Fourteenth Amendment is to be effected, some meaning must be given to the words. The United States Supreme Court has attempted only to define some of the parameters of liberty in the employee dismissal context. *Board of Regents v. Roth, supra* at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558. It said that a person's liberty would be affected by two types of terminations. First, entitlement to a hearing would accrue when, in the making of the decision to terminate employment, charges were issued that might seriously damage the dismissed employee's standings and associations in his community. Second, due process rights would be afforded to the dismissed employee if the state in declining to re-employ him imposed upon him a stigma that foreclosed his freedom to take advantage of other employment opportunities.

Under the first test, this Court must determine whether the plaintiff was damaged in his standings and associations by the reason given for his dismissal. If so, due process would accord an opportunity to refute the charge. The decisions following the *Roth* and *Perry* cases have not developed any clear distinction between the terminations found to be deprivations of liberty and those found not to be. This Court is in agreement with the Court of Appeals for the Seventh Circuit which observed that "(t)he distinction between charges which

trigger procedural protection and those that do not has yet to be drawn with any degree of precision." *Suarez v. Weaver,* 484 F.2d 678, 680 (7th Cir., 1973). Nonetheless, the Court has reviewed the charge made and the circumstances surrounding the dismissal to determine if the plaintiff was damaged in his standings and associations. The plaintiff has alleged that as a result of his dismissal, he has suffered unfavorable publicity, discomfort, embarrassment, humiliation, and impairment of reputation. It is conceded in the complaint that the sole reason for the dismissal was the conviction and imprisonment for arson prior to his employment. It is the conclusion of this Court that a hearing concerning the dismissal on such a charge would have been of no value to the plaintiff.

There seems to be a clear distinction between the charge in this case and the charges which other courts have found to amount to a deprivation of liberty. Terminations based upon alleged racism, *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir., 1973), dishonesty and lack of integrity, *Hostrop v. Board of Junior College Dist. No. 515,* 471 F.2d 488 (8th Cir., 1972), alleged mental instability, *Stewart v. Pearce,* 484 F.2d 1031 (9th Cir., 1973), and moral turpitude, *Abeyta v. Town of Taos,* 499 F.2d 323 (10th Cir., 1974), have been held to require a hearing. The reason for the termination in the case at bar does not involve any activity or attitude which occurred or existed during the period of employment. Instead, the arson conviction was prior to the hiring of the plaintiff and was the result of a criminal proceeding in which the defendants had no part. A hearing prior to or subsequent to the dismissal would have revealed only that the plaintiff had been convicted of arson. The City of Kinston should not be required to conduct an independent fact-finding hearing to determine if the conviction was in fact justified. Such a hearing would be no more than a duplication of the fact-finding process which had already occurred in a tribunal much more adept in such matters. Since the criminal conviction was the sole basis of the discharge, there would have been no denial of liberty by a failure to provide the plaintiff a forum to refute the charge against him.

It is also significant that the plaintiff admits his conviction and imprisonment for arson. The Court of Appeals for the Fourth Circuit has held that when the discharged employee admits the charges against him, an opportunity to confront the accusers would be useless because the employee has become his own accuser. *McNeill v. Butz,* 480 F.2d 314, 326 (1973).

The plaintiff's admission is also dispositive of any claim that he was entitled to a hearing because the termination imposed upon him a stigma that foreclosed his freedom to take advantage of other employment opportunities. *McNeill v. Butz, supra.* The discharge would certainly do little to enhance the employment opportunities of the plaintiff; however, its significance is minimal since it was based solely on the admitted felony conviction which other prospective employers would also consider. A hearing would have harmed the plaintiff's opportunities for future employment rather than helped them because it would have publicized the fact that he was a convicted felon.

Accordingly, this Court finds that the plaintiff has failed to allege any actions by the defendants which would amount to an infringement of his liberty and require an opportunity to refute the charge against him.

The Fourteenth Amendment concept of "property" is no easier to define than the concept of "liberty". However, the United States Supreme Court has grappled with the concept in the cases of *Board of Regents v. Roth, supra,* and *Perry v. Sindermann, supra.* In *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561, the Court gave the following rule:

"To have a property interest in a benefit, a person clearly must have more than an abstract need for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

In *Perry, supra,* 408 U.S. at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580, the Court further elaborated on the term as follows:

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."

The Court goes on to say that a written contract is clearly evidence in support of the plaintiff's claim, but the absence of a contract does not foreclose the possibility that the plaintiff had a "property" interest in continued employment for purposes of due process.

The plaintiff alleges in the complaint that he was employed as a fireman with the City of Kinston on November 23, 1973. It is further alleged that, five days later, the defendant, Koonce, told the plaintiff that he was being fired because of his previous criminal record. In an affidavit of November 4, 1974, the plaintiff testified as follows:

"I was not told of being on the Department in any other way except as a full time city employee. Had I been told anything else, I would have never quit a full time regular employment for a job only as a part time job. I was never told that I was hired subject to the approval of the City Manager. All I was told was that I was a full time employee of the City of Kinston."

This Court also takes notice of certain sections of the Code of Ordinances of the City of Kinston. Section 16–39 of the Code provides that all appointments to positions in the service of the city are for a probationary period of twelve months. Section 16–1 of the Code provides that each person employed to work in any capacity in any department of the city shall be employed at the pleasure of the city and may be dismissed with or without cause by city authorities at any time.

█ In light of the foregoing, it is apparent that the plaintiff had no "property" interest in the Fourteenth Amendment sense. The plaintiff admits that he had no written contract with the City of Kinston which would be evidence of an employment agreement. That is, of course, not fatal to his property claim if he can demonstrate that there was an implied contract based upon the words, conduct, or past policies of those persons who hired him. The relevant inquiry is then whether the officials of the City of Kinston at any time made an actual or implied promise that his employment was of a permanent nature and that he was not a probationary employee.

The plaintiff has alleged that he was hired, but he has not alleged that the defendants or any city employee told him or in any way implied that his employment was permanent or for a certain period. In his affidavit, the plaintiff deftly sidesteps the question of the representations made to him by the fire department by saying that "I was not told of being on the Department in any other way except as a full time city employee." This statement can be interpreted in at least two ways. The plaintiff may be saying that nothing was said about the nature or length of his employment or he may be saying that he was told his employment was full time. Even if the latter is the case, the plaintiff has not alleged that he was ever told that his employment was for any certain period or that he could be discharged only under certain circumstances. At the hearing before this Court, counsel for the plaintiff was asked if there was anything in the conversations between the plaintiff and the officials who hired him or in their actions which may have given the plaintiff the impression that his employment was anything other than probationary. Counsel was unable to cite any such conversation or action.

█ This Court is aware that rules and understandings promulgated or fostered by city officials could justify the plaintiff's "property" interest. *Perry v. Sindermann, supra.* The plaintiff, however, has alleged no such situation. Instead, the defendants point to the city ordinances which explicitly say that employment is probationary for the first twelve months and that dismissal may be without cause and in a summary

fashion. The plaintiff has given no indication that a contrary impression was fostered by city rules or the policies and practices of city officials and employees.

■ It is the conclusion of this Court that the plaintiff had no more than a unilateral expectation that his employment was for any certain period. Such an expectation does not constitute a Fourteenth Amendment "property" right. *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Accordingly, the plaintiff has no interest that could invoke rights to procedural due process under the Fourteenth Amendment. A hearing would have been a useless exercise because the plaintiff would have been able to legitimate his claim only by his subjective expectations.

■ In finding that the defendants abridged neither the "liberty" nor the "property" interests afforded the plaintiff by the Fourteenth Amendment, this Court concludes only that the plaintiff had no right to a hearing upon his dismissal. The question of whether an adequate appeal procedure was available to the plaintiff is not reached by this Court.

### c. Right to Equal Protection

■ The plaintiff has also alleged that his dismissal amounted to a denial of equal protection of the laws as required by the Fourteenth Amendment. It is the thrust of the plaintiff's argument that his discharge, because of his prior criminal conviction for arson, was a denial of equal protection. The plaintiff brings himself within that class of citizens who have been convicted of a felony and have completed the term of imprisonment. This class of people is not one which has been declared to be a "suspect class" which would merit special handling. Thus, the defendants were free to make such classifications in their hiring and firing practices as would be in the public interest as long as they did not act arbitrarily or capriciously.

■ Common sense dictates that in many instances, the government must have authority to separate employees because of conduct occurring prior to their employment. *Dew v. Halaby,* 115 U.S.App.D.C. 171, 317 F.2d 582 (1963). This Court finds that any argument that the defendants acted capriciously or arbitrarily in discharging the plaintiff from the fire department because he was a convicted arsonist to be totally devoid of merit. Counsel for the plaintiff apparently believes that a basis of the decision to discharge the plaintiff was a fear that he would burn the fire house. This falls far short of covering the considerations which must be employed by the city officials. Not only must they consider the past record and character of their employees, they must also seek to insure continued public confidence in government and the services it provides.

This is also a situation where the prior conviction is directly related to the duties of a fireman. The plaintiff was not accused of being a sexual deviant, an alcoholic, or an insubordinate employee. Instead, he was accused of an act directly antithetical to the duties of a fireman.

■ The Court is at a loss to understand why the plaintiff was hired in the first place, but it does find that the defendants acted wisely when they dismissed the plaintiff. The discharge was neither arbitrary nor capricious and the plaintiff was not denied the equal protection of the laws when he was discharged.

### IV.

■ Finally, the plaintiff, proceeding under Title 42, United States Code, Section 1985, alleges that the defendants conspired to deprive him of rights, privileges, or immunities secured by the United States Constitution. This Court has found that the plaintiff was subjected to no such deprivation; consequently, the plaintiff is unable to state a cause of action under this section.

### V.

In summary, this Court has found that there is no genuine issue as to any material fact developed in this action. It is the

conclusion of this Court that the plaintiff has failed to allege a deprivation of a constitutional right, a necessary element in a civil rights action and that the defendants are entitled to judgment as a matter of law.

NOW THEREFORE, in accordance with the foregoing, it is

ORDERED that the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure be, and the same is hereby ALLOWED, and

FURTHER ORDERED, that this action be, and the same is hereby DISMISSED, and

Let this ORDER be entered forthwith.