Representative Kathy Spelts Chairman Interim Committee on the State Lottery Room 46, State Capitol Denver, CO 80203
Dear Representative Spelts:
I am writing in response to your request for an opinion concerning whether it is permissible for the general assembly to exempt certain sections of the proposed lottery bill from the provisions of C.R.S. 1973, 24-5-101.
QUESTION PRESENTED AND CONCLUSION
Your specific question is whether it is permissible for the general assembly to exempt proposed C.R.S. 1973, 24-35-204(1) and (3)(c), 24-35-206(2) and (4), and 24-35-207(1) from the provisions of C.R.S. 1973, 24-5-101.
 My answer is yes. It is my opinion that no provisions of the United States or Colorado Constitutions prevent the general assembly from exempting the above-referenced sections of the proposed lottery bill, C.R.S. 1973, 24-35-201 et seq., from the provisions of C.R.S. 1973, 24-5-101.
ANALYSIS
C.R.S. 1973, 24-5-101 provides in pertinent part as follows:
 (T)he fact that a person has been convicted of a felony or other offense involving moral turpitude shall not, in and of itself, prevent him from applying for and obtaining public employment or from applying for and receiving a license, certification, permit or registration required by the laws of this state to follow any business, occupation or profession.
Your opinion request indicates that it is proposed to exempt several sections of the proposed lottery bill from the requirements of C.R.S. 1973, 24-5-101. Because the language of these sections varies, somewhat different qualifications are created for the different positions involved.[1] See footnote 1 which appears at the end of the text. The legal analysis, however, is the same for all sections.
By amendment to article XVIII, section 2 of the Colorado Constitution, effective December 19, 1980, the general assembly was authorized to establish a state lottery. This grant of authority to the legislature provides the constitutional basis for enactment of the proposed lottery bill. The specifics of the proposed lottery bill, however, are not set forth in the aforesaid constitutional amendment; and therefore, the means to establish the state lottery are provided the general assembly under its police powers.
As a general matter, the Colorado legislature is empowered to enact such legislation as it may deem necessary to protect the health, safety, and welfare of the people. People v.Blue, 190 Colo. 95, 544 P.2d 385 (1975). Under this power, the general assembly may choose to limit those benefits which it has previously bestowed. O'Quinn v. Walt Disney Productions,Inc., 177 Colo. 190, 493 P.2d 344 (1972). Here, the legislature undoubtedly has the power to exempt the benefits provided by section 24-5-101 from portions of the proposed lottery bill. Since the privileges of section 24-5-101 were created by the legislature, it is axiomatic that the legislature can revoke them where it sees fit to do so. This may only be done, however, in a manner consistent with the provisions of both the United States and Colorado Constitutions. Schware v.Board of Bar Examiners, 353 U.S. 232 (1957).
Serious constitutional challenges have been raised to state and local legislation restricting public employment opportunities for those persons convicted of crimes. These challenges, where substantial, have usually been raised in connection with claims that such legislation is violative of due process and equal protection of the law.
Substantive due process guarantees protect the individual against arbitrary or irrational state action. Kindem v. City ofAlameda, 502 F. Supp. 1108 (N.D. Cal. 1980). However, where no property or liberty interest is impaired, government action cannot be challenged on the basis of substantive due process protections, at least in the tenth federal circuit (including Colorado). Weathers v. West Yuma County School DistrictR-J-I, 530 F.2d 1335 (10th Cir. 1976).
The opportunity for public employment, of an applicant therefor, is not a property interest. Carlyle v. Sitterson,438 F. Supp. 956 (D.N.C. 1975). No liberty interest is involved where an employee is dismissed, or applicant for employment rejected, for past criminal convictions. Carlyle v. Sitterson,supra; Hetherington v. State Personnel Board,82 Cal.App.2d 582, 147 Cal.Rptr. 300 (Cal.App. 1978).Contra, see Kindem v. City of Alameda,supra. Also, protection from arbitrary government action is, itself, not a liberty interest. Weathers v. WestYuma, supra.
Although the question is a close one, on balance I conclude that applicants for employment with the state lottery, who are denied employment based upon conviction of the crimes specified in the proposed lottery bill, would have an insufficient interest to challenge those standards of employment on substantive due process grounds.[2]
The second focus of constitutional challenges to disqualification of convicted criminals from public employment has been the equal protection clause of the Fourteenth Amendment. In Colorado, the concept of due process of law under the Colorado Constitution also includes equal protection guarantees. People v.Max, 70 Colo. 100, 198 P. 150 (1921).
Applicants for government employment are entitled to equal protection against arbitrary government action. Scott v.Macy, 349 F.2d 182 (D.C. Cir. 1965). Government employment is not a fundamental right. Watson v. Cronin,384 F. Supp. 652 (D. Colo. 1974). Additionally, no suspect class is present where discrimination in employment is based upon one's criminal record. Upshaw v. McNamara, 435 F.2d 118 (1st Cir. 1970). Therefore, the guarantees of equal protection require that a statute discriminating on the basis of criminal record against persons seeking public employment merely be a rational means of advancing a valid state interest. Thompson v.Gallagher, 489 F.2d 443 (5th Cir. 1973).
Each of the pertinent provisions of the proposed lottery bill, C.R.S. 1973, 24-35-204(1) and (3)(c), 206(2) and (4), and 207(1), disqualifies an applicant for employment with the lottery from an office or license on the basis of conviction of a felony or gambling-related offense. I think it is clear that the state interest behind such disqualification is that the state desires to employ a trustworthy and competent group of persons who will promote trust and public confidence in the lottery. These same state interests have been continually asserted in connection with equal protection challenges to state statutes disqualifying felons and those convicted of other crimes from public employment. See Watson v. Cronin, supra;Kindem v. City of Alameda, supra;Carlyle v. Sitterson, supra; Thompson v.Gallagher, supra; and Hetherington v. StatePersonnel Board, supra.
The validity of disqualification of convicted felons from employment with the lottery is supported by several cases. SeeWatson v. Cronin, supra; Upshaw v.McNamara, supra; Caryle v. Sitterson,supra; Hetherington v. State Personnel Board,supra; and Carbonaro v. Recher,392 F. Supp. 753
(E.D. Pa. 1975). None of these cases specifically involved a state lottery; however, such cases stand for the proposition that a state's decision to bar convicted felons from obtaining government employment or benefits is rationally related to the objective of restricting such employment or benefits to trustworthy and competent persons. Thus, in each such case the challenged statute passed equal protection muster. Other cases have reached opposite results. See Butts v. Nichols,381 F. Supp. 573 (S.D. Iowa 1974); Smith v. Fussenich,440 F. Supp. 1077 (D. Conn. 1977); and Kindem v. City ofAlameda, supra.
An additional factor supports the conclusion that disqualification of convicted felons from employment with the lottery squares with equal protection guarantees. Here, the proposed lottery bill specially exempts section 24-5-101 from its provisions. This unique exemption would seem to reflect the general assembly's determination that employment with the lottery is a special and sensitive occupation, calling for the most trustworthy employees. Where convicted felons are disqualified from sensitive occupations (such as peace officers) the courts have been quick to cite this factor in support of upholding the disqualification. See Upshaw v. McNamara,supra; and Hetherington v. State PersonnelBoard, supra.
I would therefore conclude that the disqualification of convicted felons from the lottery does not violate equal protection.
Although those convicted of gambling-related offenses may not be convicted felons, there appears to be good reason why my conclusion regarding disqualification of convicted felons would apply to those convicted of gambling-related offenses which are not classed as felonies.
First, this latter disqualification similarly applies only to employment with the lottery, which, as stated above, is clearly a sensitive occupation. Next, since the lottery is essentially legalized gambling, perpetration of a gambling-related offense is an act directly antithetical to the responsibilities of those employed by the lottery — duties which include ensuring the lottery is fairly operated. Last, it is rational to conclude that disqualification for gambling-related offenses (which relate directly to the duties of lottery employment) insures the integrity of the lottery at least to the extent that disqualification for any felony (for instance, manslaughter) would. Indeed, the tailoring of a disqualifying conviction to the duties of lottery employment removes many of the equal protection obstacles raised in such cases as Butts v. Nichols,supra and Kindem v. City of Alameda,supra. Therefore, I would conclude that disqualification of a person from the lottery for gambling-related convictions does pass equal protection muster.
Conviction of an offense involving moral turpitude could also disqualify persons from employment as director of the lottery and as licensed sales agents. Proposed C.R.S. 1973, 24-35-204(1) and 206(2) and (4). As stated above, employment with the lottery involves a special responsibility to the public. It also includes a concomitant opportunity for theft or corruption. Because of these factors, the narrowly tailored disqualification for those convicted of crimes involving moral turpitude appears to be rationally related to the objective of creating an honestly operated state lottery. Certainly conviction of a crime involving moral turpitude raises the same spectre of untrustworthiness that attends to conviction for a gambling-related offense or for any felony. Therefore, I conclude this disqualification is not unconstitutional, as violative of equal protection.
Finally, the lottery bill disqualifies for employment as licensed sales agents those convicted of crimes involving fraud or misrepresentation. Proposed C.R.S. 1973, 24-35-206(4). Licensed sales agents, unlike others employed with the lottery, have the most direct contact with the public. That being the case, the opportunities for fraud or misrepresentation are likely high for licensed sales agents, as compared to others occupying administrative positions with the lottery. Thus, a special disqualification from the position of licensed sales agent, based upon an offense involving fraud or misrepresentation, seems narrowly tailored to the responsibilities of employment. This disqualification therefore is not violative of equal protection guarantees. Reference is further made to the discussion above with respect to the other pertinent employment disqualifications.
Your inquiry does not explain the reasons why different employment disqualifications are proposed for the several categories of lottery employees. I have presumed that the difference in the disqualifications reflects careful legislative tailoring of the disqualification to the responsibilities of each position. However, to the extent these differences may be arbitrary, a strong equal protection challenge could be made to the proposed lottery bill on the basis of internal inconsistency and irrationality. See Miller v. Carter, 547 F.2d 1314
(7th Cir. 1977). Such an analysis is beyond the scope of this opinion.
Although not determinative of these questions, it is relevant to mention that at least one other state, Illinois, has enacted similar employment prohibitions in connection with its lottery. See S.H.A. ch. 120, 1160.1.
SUMMARY
It is my opinion that the exemption of C.R.S. 1973, 24-5-101 from certain provisions of the proposed lottery bill, C.R.S. 1973,24-35-101 et seq. is permissible.
Very truly yours,
 J.D. MacFARLANE Attorney General
GAMBLING EMPLOYEES, PUBLIC QUALIFICATIONS EQUAL PROTECTION EMPLOYMENT
C.R.S. 1973, 24-5-101
C.R.S. 1973, 24-35-204(1) and 3(c) C.R.S. 1973, 24-35-206(2) and (4) C.R.S. 1973, 24-35-207(1)
Colo. Const. art. XVIII, § 2
Colo. Const. art. II, secs. 6 and 25
LEGISLATIVE BRANCH Legislative Council
Examination of whether it is permissible to exempt C.R.S. 1973,24-5-101 from portions of state lottery bill. Conclusion: permissible to do so.
[1] Proposed C.R.S. 1973, 24-35-204(1) sets forth the qualifications of the director of the state lottery division. It requires, among other things, that the director be of good character and not have been convicted of any felony or gambling-related offense. Exempting these qualifications from section24-5-101 would mean that an applicant for director would be disqualified from employment because of a prior felony or gambling-related offense. In addition, the executive director of the department of revenue, who shall appoint the director pursuant to proposed C.R.S. 1973, 24-35-202(1), could determine to disqualify an applicant for the position of director due to any prior conviction of an offense involving moral turpitude. This is so because, in determining whether an applicant is of good character, the executive director could consider a previous offense involving moral turpitude as conclusive of that question. Exemption of section 24-5-101 from the provisions of proposed24-35-204(1) creates this possibility.
Proposed C.R.S. 1973, 24-35-204(3)(c) provides that the director may employ personnel to carry out the purposes of the lottery bill. It further provides that no person shall be employed by the director who has been convicted of a felony or gambling-related offense. Exempting section 24-5-101 from this portion of the proposed lottery bill conclusively disqualifies from employment only those convicted of a felony or gambling-related offense. Others, including persons convicted of other crimes involving moral turpitude, are not so disqualified.
Proposed C.R.S. 1973, 24-35-206(2) provides in part that pursuant to rules and regulations the license of a lottery sales agent may be not renewed where such agent has been convicted of a felony or gambling-related offense or where it has been determined that the licensee's character is no longer consistent with the protection of the public interest and trust in the lottery. Exempting the provisions of section 24-5-101 from this section would mean that agents convicted of a felony, gambling-related offense, or offense involving moral turpitude could have their licenses not renewed based solely upon the fact of conviction.
Proposed C.R.S. 1973, 24-35-206(4) provides that certain persons are ineligible for any license as a sales agent. Those who are ineligible include those persons who have been convicted of a felony or gambling-related offense, any person who is not of good character and reputation in the community in which he resides, and any person who has been convicted of a crime involving fraud or misrepresentation. Eliminating the requirements of section24-5-101 from this section therefore may create an absolute bar to employment to those persons convicted of a felony, gambling-related offense, crime involving fraud of misrepresentation, or offense involving moral turpitude.
Proposed C.R.S. 1973, 24-35-207(1) provides that no member of the state lottery commission shall have been convicted of a felony or gambling-related offense. Exempting this section from the requirements of section 24-5-101 creates an absolute bar to employment as a member of the commission to any person convicted of a felony or gambling-related offense.
[2] It should be noted that there is a serious question whether the disqualifications from employment set forth in the lottery bill could withstand substantive due process scrutiny. Although such scrutiny does not appear applicable here, analogous disqualifications have been struck down by courts in several jurisdictions. See Kindem v. City of Alameda,supra; Osterman v. Paulk, 387 F. Supp. 669
(S.D. Fla. 1974); Thompson v. Gallagher, 489 F.2d 443
(5th Cir. 1973); and Davis v. Bucher, 451 F. Supp. 791
(E.D. Pa. 1978). However, these cases do not involve sensitive occupations such as lottery employment.