**Tommy THOMPSON, Plaintiff-Appellant,**

v.

**Honorable Harry K. GALLAGHER, Mayor for the City of Plaquemine, Louisiana, Defendant-Appellee.**

**No. 73–1415.**

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1973.

Rehearing Denied Feb. 13, 1974.

William E. Rittenberg, New Orleans, La., Melvin L. Wulf, Leon Friedman, ACLU, New York City, for plaintiff-appellant.

Joseph B. Dupont, Sr., Plaquemine, La., for defendant-appellee.

Before TUTTLE, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Tommy Thompson served in the United States Army for 22 months before being discharged under other than honorable conditions on May 14, 1970. He went to work for the City of Plaquemine, Louisiana, on December 16, 1971, as custodian at the city diesel plant. Five weeks later, the city council passed the following ordinance:

> Resolved, that any person employed by the City of Plaquemine or by the Emergency Employment Act, if said person is a veteran, must have an Honorable Discharge and must be a man of good character.

The day after the ordinance was passed, the City of Plaquemine fired Thompson because his employment violated the ordinance. Thompson sued the Mayor of Plaquemine under 42 U.S.C. § 1983, charging that his dismissal violated his rights under the due process and equal protection clauses of the Fourteenth Amendment, that it was a bill of attainder and that it was an *ex post facto* law. Jurisdiction was asserted under 28 U.S. C. §§ 1331, 1343, 2201 and 2202. Thompson sought a declaration that the ordinance as applied to him is unconstitutional, an injunction restraining the mayor from applying the ordinance to him, and an order reinstating him to his position at the power plant, with compensation for wages lost as a result of the dismissal.

After a hearing on the merits, the District Court for the Middle District of Louisiana entered judgment for the defendant on the ground that the dismissal pursuant to the ordinance violated none of Thompson's rights. Thompson appeals.

I.

The first question we must consider is whether Thompson's interest in his job is protected by the Fourteenth Amendment.[1] Faced with the question of whether a state government as employer must comply with the requirements of due process in its employment practices, some courts have concluded that since a job with the government is neither life, liberty nor property, courts

---

1. The Fourteenth Amendment states, in part, ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

may not review the hiring and firing of government personnel. See, e. g., Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46 (1950), aff'd. by an equally divided court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951), Jenson v. Olson, 353 F.2d 825, 828 (8 Cir., 1965), and Orr v. Trinter, 444 F.2d 128, 133 (6 Cir., 1971).

The intellectual progenitor of all these cases is McAuliffe v. Mayor of City of New Bedford, 155 Mass. 216, 29 N.E. 517 (1892). Judge (later Justice) Holmes summarily rejected a policeman's complaint that he had been fired because he exercised his rights under the First Amendment, saying simply,

> [t]he petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. 155 Mass. at 220, 20 N.E. at 517.

■ Notwithstanding Holmes' distinguished imprimatur, we feel that this reasoning does not come to grips with the question in cases such as this. The real question is whether the Fourteenth Amendment's prohibition against governmental actions which violate due process of law reaches a government's actions as employer. We feel that it does.

■ The Fourteenth Amendment is a general prohibition against arbitrary and unreasonable governmental action. It no longer suffices to say that although a government may not deprive someone of a *right* arbitrarily, it may do so in the case of a *privilege*. Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969). The right-privilege distinction has been rejected as a method of analysis in Fourteenth Amendment cases, because the question is not whether a person has a right to something denied by the government, but whether the government acted lawfully in depriving him of it. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and cases

cited therein at 539, 91 S.Ct. at 1589, "One may not have a constitutional right to go to Baghdad, but the government may not prohibit one from going there unless, by means consonant with due process of law." Homer v. Richmond, 110 U.S.App.D.C. 226, 292 F.2d 719, 722 (1961), cited in Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961).

## II.

In the context of public employment, the question of whether employment is protected by the Fourteenth Amendment usually arises when an employee is dismissed for actions which may be characterized as the exercise of some other specifically defined constitutional right. In Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), a tenured professor was dismissed from his position at Brooklyn College for asserting his Fifth Amendment privilege against self-incrimination at a Congressional hearing. The court held the dismissal invalid both because it punished assertion of constitutional rights and because "constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." 350 U.S. at 556, 76 S.Ct. at 640. Slochower was reaffirmed recently in Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971).

As precedent for the latter proposition, the court relied on Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952), in which certain staff and faculty members of the Oklahoma Agricultural and Mechanical College were fired for refusing to take an oath disclaiming membership in certain allegedly subversive organizations. The court invalidated the dismissals, holding that the oath lumped together innocent and knowing activity, and as such was an assertion of arbitrary power. 344 U.S. at 191, 73 S.Ct. 215.

In Hobbs v. Thompson, 448 F.2d 456 (5 Cir., 1971), this court invalidated sec-

tions of the city charter and ordinances of Macon, Georgia, which restricted electioneering activities of that city's firemen. We held there that the statutory scheme was overbroad and interfered with the firemen's First Amendment rights. In doing so, we specifically relied on the proposition in Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811, that " 'the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.' Keyishian v. Board of Regents, [385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)]." 448 F. 2d at 474.

■ This case differs somewhat from the *Weiman-Slochower-Pickering* line of cases since it involves no constitutional right other than the right to be free from arbitrary and unreasonable government action. But the same reasoning applies. Just as a public employee does not give up his First Amendment rights when he begins receiving a pay check from the government, neither does he give up his right to due process of law. The Fourteenth Amendment stands for the proposition that the government must act, when it acts, in a manner which is neither arbitrary nor unreasonable. This stricture is in addition to those which restrict the government from acting in a manner which impinges on freedom to speak or associate, or to be free from self-incrimination. It is one which most certainly applies not only to the government as policeman but also to the government as employer. Public employees are every bit as protected by the Fourteenth Amendment's safeguards as is the rest of the populace. Grausam v. Murphey, 448 F.2d 197 (3 Cir., 1971), Buckley v. Coyle Public School System, 476 F.2d 92 (10 Cir., 1973), Fitzgerald v. Hampton, 152 U.S.App.D.C. 1, 467 F.2d 755 (1972).

### III.

Having determined that Thompson's dismissal must be evaluated according to Fourteenth Amendment standards, we turn now to the question of whether the city's dismissal of him violates due process or equal protection. Thompson was dismissed pursuant to a city ordinance forbidding the employment by the city of any veteran not having an honorable discharge from the armed forces. The ordinance thus creates two different classifications. First, it divides the employees of the city into veterans and non-veterans. In addition, it distinguishes between veterans with honorable discharges and those with other than honorable discharges.

■ Thompson attacked the ordinance on both equal protection and due process grounds. In many cases, of which this is one, it makes little difference which clause of the Fourteenth Amendment is used to test the statute in question. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The question is whether the challenged statute is a rational means of advancing a valid state interest. A regulation not reasonably related to a valid government interest may not stand in the face of a due process attack. Likewise, a classification which serves no rational purpose or which arbitrarily divides citizens into different classes and treats them differently violates the equal protection clause.

■ Although it is proper for a city to create different classes of citizens and treat them in different manners, the classifications thus created must serve a rational and valid governmental purpose. Thus, we are faced with two questions. Is there a valid governmental interest at stake in this case? Does the ordinance bear a rational relationship to the fulfillment of those interests?

In an effort to determine what interest of the City of Plaquemine was at stake in this ordinance, we have listened to oral argument, read the briefs presented by both parties, and examined the entire record, including the transcript of the trial held in district court. The defendant seems to feel that there are three interests which the ordinance is intended to fulfill.

The first is that persons with other than honorable discharges should not be employed by the city. The district court apparently accepted this as a valid justification for the ordinance, stating,

> The burden is upon the plaintiff to prove his case and everyone who has testified in this case has testified that this ordinance was passed because first they felt that no one with a Dishonorable Discharge or a Discharge under other than honorable conditions should work for the City of Plaquemine. I personally would wholeheartedly agree.

Of course, to state that persons with other than honorable discharges should be fired because a person with other than an honorable discharge is unfit to be a city employee is totally circular. The question is, what is it about a person with other than an honorable discharge that makes him unfit to be a city employee.

It was suggested at trial that the ordinance was an effort to comply with the Emergency Employment Act of 1971, P.L. 92–54, 85 Stat. 146, which provided funds to the city for Thompson's wages of $350.00 per month. The act, insofar as it is relevant here, authorized financial assistance for federal, state and local governmental units to hire people particularly affected by high unemployment. Congress was particularly concerned about low-income persons, migrants, those from socio-economic backgrounds generally associated with high unemployment, young persons entering the labor force, persons recently separated from military service, and others likely to have trouble finding jobs. Governmental units seeking assistance under the act must submit to the Secretary of Labor applications which describe the programs to be instituted. The act further provides that these applications must include

> . . . assurances that special consideration in filling public service jobs will be given to unemployed or underemployed persons who served in the Armed Forces in Indochina or Korea or after August 5, 1964 in accordance with criteria established by the Secretary (and who have received other than dishonorable discharges); . . . P.L. 92–54 § 7(c)(4).

■ Thus, the act provides preferences for veterans with "other than dishonorable discharges." The Plaquemine ordinance, however, requires the discharge of veterans with other than honorable discharges. Thompson has an undesirable discharge under other than honorable conditions. This is clearly demonstrated by the record in this case, although Thompson's attorney, at the beginning of the trial, stipulated that he had a dishonorable discharge. An undesirable discharge is not an honorable discharge, but neither is it a dishonorable discharge. Thompson's dismissal not only fails to further the purposes of the act, it actually subverts them. As a veteran who has received other than a dishonorable discharge, Thompson is actually entitled to a preference under the act. Thus, the employment act cannot provide any justification for the ordinance which led to Thompson's dismissal.

Finally, the appellee appears to argue that the characteristics which cause a person to receive other than an honorable discharge from the military are characteristics which hinder that person's effectiveness as a city employee. This rationale is stated in the appellee's brief in the following manner:

> Certainly, the fact that a person does not get an honorable discharge from the armed forces conotes, [sic] if not criminality, at least antisocial character. The City undoubtedly has an interest in not hiring persons with such character . . . . It cannot be gainsaid that the exclusion of persons with criminal and/or strongly antisocial character will not, in the long run, operate to create a better serving, more efficient and more reliable service.

■ We agree that the city has an interest—indeed, a very strong interest

—in maintaining the quality of its work force and assuring that its employees perform their tasks as well as possible. Of the three governmental interests advanced by the appellee, this is the one that may be considered for the purposes of Fourteenth Amendment analysis.

### IV.

The next question, therefore, is whether the classifications in question are reasonably related to the city's interest in maintaining the quality of its work force. First, we consider the distinction between veterans with honorable discharges and other veterans.

Numerous factors which have absolutely no relationship to one's ability to work as a custodian in a power plant may lead to other than honorable discharges from the military, including security considerations, sodomy, homosexuality, financial irresponsibility and bed-wetting. The point is not that some or all of these considerations must, as a matter of due process, be excluded from consideration of fitness to hold the position of power plant custodian. However, a general category of "persons with other than honorable discharges" is too broad to be called "reasonable" when it leads to automatic dismissal from any form of municipal employment. We have no hesitancy in calling the ordinance which bars that class of persons from city employment, without any consideration of the merits of each individual case, irrational.

In addition, the statute distinguishes between veterans and non-veterans. By eliminating veterans with other than honorable discharges, the city eliminates veterans with those characteristics which lead to other than honorable discharges. Yet there is no effort to "weed out" civilians who have the same characteristics. We have been directed to no ordinance limiting city employment to those who are financially responsible, or who are good security risks, or who have never committed sodomy, or who do not wet their beds.

There has not even been a showing that the city excludes convicted felons from employment. This is not to imply that any or all of these restrictions would be valid. On that question we express no opinion. The point is only that the ordinance being challenged might stand in a very different light if it were part of a general comprehensive scheme which enumerated characteristics deemed to be conducive to competent performance as a city employee, and which excluded all those who lacked those characteristics. That is not what we have here. As it now stands, the Plaquemine ordinance subjects veterans to standards to which non-veterans are not subjected. It also disqualifies veterans who have received other than honorable discharges, in spite of the fact that a veteran may receive a discharge for a wide range of reasons, many of them totally unrelated to performance as a city employee. By no stretch of the imagination could such a scheme be called rational.

The cause is reversed and remanded to the district court for proceedings not inconsistent with this opinion.