David RAY, Plaintiff,

v.

Joseph EDWARDS, et al., Defendants.

Civ. A. No. C81–2129A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 1982.

A. Lee Parks, Jr., Robert N. Meals, Meals & Parks, Atlanta, Ga., for plaintiff.

Vivian Egan, Asst. Atty. Gen., State of Ga., Jonathan A. Zimring, Ga. Legal Services, Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

This action is brought under 42 U.S.C. § 1983 by a former Georgia state employee seeking to redress alleged deprivations of constitutional rights arising out of his termination from state employment. Plaintiff also has appended state law tort claims alleging defamation of character and intentional infliction of emotional distress. Finally, plaintiff seeks a declaratory judgment as to the constitutionality of Ga.Code Ann. § 99–3502. Presently pending before the Court are (1) summary judgment motions filed by each of the defendants; (2) plaintiff's motion to amend Count Six of his complaint; (3) defendants Edwards, Ermutlu and Georgia Association of Retarded Citizens' ("GARC") motion for leave to file motion in limine; and (4) defendants Edwards and Ermutlu's motion to strike portions of plaintiff's affidavit and exhibits. The latter three motions will be addressed in the context of the Court's consideration of the motions for summary judgment.

## FACTS

Unless otherwise noted the facts listed below are undisputed by the parties.

1. Plaintiff David Ray is an educator and administrator specializing in the care of the mentally retarded and handicapped.

2. In June 1979 Ray was appointed to the position of superintendent of the Georgia Retardation Center ("GRC") in Chamblee, Georgia.

3. The GRC is a state supported institution operating within the Division of Mental Health and Mental Retardation of the Georgia Department of Human Resources ("DHR") and providing residential care and treatment to mentally retarded citizens.

4. In March 1980 defendant Joseph Edwards was appointed Commissioner of DHR.

5. In August 1981 Edwards named defendant Ilhan Ermutlu as Director of DHR's Division of Mental Health and Mental Retardation, making him plaintiff's immediate superior.

6. On August 19, 1981, defendant Edwards informed plaintiff by memorandum that an in-house review of the treatment and operational programs at GRC would be conducted by a committee headed by Dr. James Craig. Edwards indicated that this review, which was to include all aspects of student care and treatment programming and an evaluation of the working relationship existing between direct care staff and supervisory staff at GRC, was prompted by varying statements he had received in recent months with regard to student care and other operational matters at GRC.

7. During the first week of September 1981, defendant Ermutlu informed plaintiff that the Craig committee would not be investigating GRC, and that defendant Edwards had decided instead to ask the Georgia Bureau of Investigation ("GBI") to conduct the investigation.

8. Beginning in October 1981 a series of reports appeared in local newspapers and on local television stations detailing allegations of student abuse at GRC.

9. Defendant Georgia Association of Retarded Citizens ("GARC") is a private, nonprofit corporation organized under the laws of Georgia, which views its basic purpose as achieving adequate and appropriate services for mentally retarded persons.

10. On November 9, 1981, GARC issued a report entitled "Recommendations for Action in Response to Charges of Abuse at the Georgia Retardation Center." Based upon their own investigation, GARC recommended, *inter alia,* the "[i]mmediate suspension of all administrative personnel at the Georgia Retardation Center in Chamblee who had prior knowledge or who, by virtue of their position of responsibility, should have had knowledge of abuse incidents at the Center."

11. On November 12, 1981, defendant Edwards terminated plaintiff from his position as superintendent of GRC. Edwards' termination letter did not state any reasons for the termination, and plaintiff was not afforded any hearing before being terminated.

## DISCUSSION

Plaintiff filed his complaint in this action on November 16, 1981, just four days after he was terminated by defendant Edwards. In his complaint, plaintiff asserted the following causes of action: (1) defendants Edwards, Ermutlu and GARC, acting both individually and in concert and conspiracy with one another, wilfully and maliciously caused his termination from GRC in violation of property and liberty rights protected under the due process clause of the Fourteenth Amendment (Counts One and Two); defendants Edwards and Ermutlu acted arbitrarily, capriciously and unreasonably in terminating plaintiff, in violation of his right under the Fourteenth Amendment to substantive due process (Count Three); (3) Georgia Code Ann. § 99–3502 is unconstitutional in that it requires the Governor to appoint to the defendant Board of Human Resources ("BHR") only those doctors who are nominated by a nominating commission, half of whose members are selected by the Medical Association of Georgia, a private organization (Count Four); (4) defendant GARC libeled plaintiff in its report issued November 9, 1981 (Count Five); (5) defendant Edwards slandered plaintiff by innuendo (Count Six); defendants Edwards, Ermutlu and GARC, acting individually and in concert and conspiracy with one another, have intentionally inflicted emotional distress on plaintiff (Count Seven). Defendants have moved for summary judgment with respect to all of these claims. The Court will consider the motions with respect to each claim in turn.

### I. *The § 1983 Claims*

#### A. *Property Interest*

██ In Count One of his complaint plaintiff contends that he possesses a property interest in his "right to follow one's chosen profession, business occupation or to labor in one's chosen field of endeavor...." However, plaintiff does not argue that he has any entitlement to continued employment at GRC. Nor, on the undisputed facts, could plaintiff prevail on such an

argument.[1] Rather, plaintiff contends that he has a property interest in his ability to pursue his chosen profession, quoting the following language from the case of *Muse v. Connell*, 62 Ga.App. 296, 303, 8 S.E.2d 100 (1940):

> The right to follow one's profession, business, or occupation, or to labor, is a valuable property right, protected by the constitution and laws of this State, subject only to such restrictions as the government may impose for the welfare and safety of society. *Hughes v. State Board of Examiners*, 162 Ga. 246, 256 [134 S.E. 42].

Plaintiff contends that defendants' actions stigmatized him, as a result of which his ability to pursue his profession has been impaired and his protected property interest thereby infringed.

■ Plaintiff, however, misconstrues the import of *Muse*. That case involved an employee's *contractual* right to a particular job, and the court held that the wrongful deprivation of that right was an infringement of a property interest and not merely a personal injury. That the court was not recognizing a generalized property interest in employability is further supported by reference to the *Hughes* case, *supra,* upon which the *Muse* court relied. *Hughes* addressed the constitutionality of licensing requirements for physicians and held only that the right of qualified individuals to obtain such a license was a property right subject to due process protections. 162 Ga. at 257–58, 134 S.E. 42.

Neither *Hughes* nor *Muse* held that individuals have a property right in their professional reputations. Plaintiff's effort to assert such a property right here merely conflates his property interest claim with his liberty interest claim, where such damage to reputation is cognizable. However, plaintiff's effort cannot disguise the undisputed fact that under Georgia law he had no claim of entitlement to continued employment with the state. Accordingly, in the absence of any protectible property right in his job, defendants are entitled to summary judgment on Count One of plaintiff's complaint.

## B. *Liberty Interest*

■ In Count Two of his complaint plaintiff contends that his summary discharge constituted an unconstitutional infringement of his liberty, because the resulting stigma to his reputation has foreclosed employment opportunities. There is no question that an alleged stigma to reputation in connection with a discharge may state a claim under § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process. *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). However, defendants contend that to make out his claim, plaintiff must demonstrate that defendants have caused

1. The existence of a property interest in employment is a matter of state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Under Georgia law, absent an unambiguous contract, an employee is terminable at will. Ga.Code Ann. § 66–101; *Georgia Power Co. v. Busbin*, 242 Ga. 612, 613, 250 S.E.2d 442 (1978). This rule has been applied to employees of public agencies. *See, e.g., Murphine v. Hospital Authority of Floyd County*, 151 Ga.App. 722, 261 S.E.2d 457 (1979). In the instant case it is undisputed that, prior to plaintiff's appointment, the position of Superintendent of GRC was removed from the "classified service," which is governed by the rules of the State Merit System, and placed in the "unclassified service," which is not protected under the Merit System. *See* Attachment K to Defendant GARC's Motion for Summary Judgment and Dismissal. Employees in the classified service may be terminated only after an evidentiary hearing on the grounds of their discharge, Ga.Code Ann. § 40–2207; employees in the unclassified service have no such rights. *See Vaughn v. Edwards*, C81–1375A (N.D.Ga. November 18, 1981). Furthermore, plaintiff's letter of appointment expressly stated that "[i]n this position you will serve at the pleasure of the Director of the Division of Mental Health and Mental Retardation," and plaintiff responded to this in his acceptance letter by writing that "[y]our letter ... spells out the terms which I agree with wholeheartedly." Attachments L and M to Defendant GARC's Motion for Summary Judgment and Dismissal. Hence, plaintiff clearly has no property interest in continued employment.

him to suffer a stigma by disclosing false, derogatory information about him, and that plaintiff has failed to come forward with any admissible evidence of such disclosures. Plaintiff, on the other hand, argues that his claim is sufficiently made out on a showing that defendants knew or should have known that his discharge amidst the GBI's ongoing investigation of alleged student abuse and mismanagement at GRC would result in his being stigmatized in the public mind.

In *Bishop, supra,* the Supreme Court held that a nontenured employee is not entitled to due process when his termination is based upon false, stigmatizing allegations *which have not been publicly aired.* 426 U.S. at 398, 96 S.Ct. at 2079. Subsequent cases have reiterated the requirement that the employer must create and disseminate a false and defamatory impression about the employee in connection with his termination before a constitutionally protected liberty interest is implicated. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *White v. Thomas,* 660 F.2d 680, 684 (5th Cir.1981); *Dennis v. S & S Consolidated Rural High School Dist.,* 577 F.2d 338, 343 (5th Cir.1978). The question before the Court with respect to Count Two of plaintiff's complaint is whether an employer has "created and disseminated a false and defamatory impression" where he discharges an employee under circumstances that he knew or should have known would result in a public perception of wrongdoing on the part of the discharged employee.

█ Defendants rely on a line of cases that reiterate the general rule; however, none of the cases cited is factually on a par with the instant case. The only two cases that the Court has found dealing with analogous factual situations support plaintiff's position. Particularly persuasive is Judge Hillman's opinion in *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D.Mich.1980). In *An-Ti* plaintiff alleged that he was wrongfully demoted from his position as head of the University physics department, but he did not allege that defendant University officials had publicized the reasons for his demotion. Rather, he contended that the local media had publicized statements made by other members of the physics department asserting that he was replaced because he was insensitive to the needs of minorities. The court, after reviewing the *Roth* and *Bishop* opinions, *supra,* responded to defendants' contention that plaintiff had failed to state a claim because he had not shown that defendants publicized their reasons for demoting him:

These cases convince me that an employee's liberty interests are infringed where the employer knows, or reasonably should have known, that in dismissing the employee, the employee's good name, honor or integrity will be diminished. While the employer himself may not be publicizing what are generally known to be the reasons for the employee's dismissal, the employer is injuring the employee by, in effect, supporting the community's belief that the employee lacks integrity. *An employer injures his employee when he knowingly fails to provide an employee an opportunity to rebut what the employer should know are the publicly-believed reasons for the employee's dismissal.* A due process hearing, in that context, minimally provides the employee an opportunity to establish that, even if he is to be dismissed, his dismissal follows from legitimate reasons and not the stigmatic ones generally supposed.

*Id.* at 1157 (emphasis added). *See also Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980). This Court agrees with the foregoing reasoning; therefore, plaintiff need not show that defendants themselves made public any false and defamatory statements about him. It is enough if defendants knew or should have known that plaintiff's termination at that particular time would result in a public perception of plaintiff's culpability for the charges that were then being investigated.

█ Defendant Ermutlu has argued that in any case he cannot be held liable for any constitutional violation arising out of plaintiff's termination, because it was defendant Edwards and not he who terminated plain-

tiff. Nevertheless, plaintiff has alleged that the decision to terminate him was reached jointly and through a conspiracy among defendants Edwards, Ermutlu and GARC, and there is sufficient evidence in the record to raise a factual issue as to whether this decision to discharge plaintiff was reached jointly by both Ermutlu and Edwards. Defendant Ermutlu may therefore be held liable under plaintiff's § 1983 claim.

Similarly, defendant GARC argues that plaintiff's constitutional claim against it must fail because there is insufficient evidence of a conspiracy between it and the state defendants. However, the Court's review of the record reveals sufficient evidence to raise a factual issue on this question. There is evidence that GARC officials had regular meetings with defendant Edwards, and that certain philosophical differences with plaintiff existed that might lead to a desire to have him removed from his position at GRC. Furthermore, the fact that defendant Edwards terminated plaintiff just a few days after GARC issued its report calling for suspension of administrative personnel at GRC is some evidence that GARC at least had an influence on the termination decision.

Defendant GARC further contends that it is immune from suit because its activities have absolute First Amendment protection. There is no doubt that GARC's political activities are entitled to First Amendment protection, *see New York Times Co. v. Sullivan,* 376 U.S. 254, 269–71, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964); and that such activities do not lose their protected character "simply because [they] may embarrass others or coerce them into action." *NAACP v. Claiborne Hardware Co.,* —— U.S. ——, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982). However, this protection is not absolute. Even a public official may recover damages for a defamatory falsehood relating to his official conduct if he proves that the statement was made with actual malice. *New York Times, supra,* 376 U.S. at 279, 84 S.Ct. at 726. Plaintiff in the instant case has alleged that

defendant GARC wilfully and maliciously and in bad faith conspired with state officials to have him discharged under circumstances they knew or should have known would stigmatize his professional reputation and foreclose future employment opportunities. Such a conspiracy will be difficult to prove; however, the Court has already found that there is sufficient evidence to raise a factual issue on this claim. If plaintiff should succeed at trial in establishing such a conspiracy, he will have shown that GARC purposefully acted to destroy his professional career, and the First Amendment will not shield GARC from liability for such actions.

Finally, defendants Edwards and Ermutlu contend that they are entitled to official immunity from any liability for damages under plaintiff's § 1983 claim. First of all, defendants are clearly entitled to immunity from damages in their official capacities, because retrospective monetary relief against a state is barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, plaintiff may seek recovery only from the state defendants as individuals. In that capacity, defendants raise the qualified immunity defense as set out in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

*Scheuer* and *Wood* established a qualified immunity from damages for state officials acting within the scope of their discretion. Once a § 1983 defendant has established that he was acting within the scope of his discretionary authority, a two prong standard is applied which calls for both an objective and a subjective evaluation of official conduct. Under the subjective portion of the test, an official forfeits his immunity when he acts "with the malicious intention to cause a deprivation of constitutional rights or other injury." *Wood, supra,* 420 U.S. at 322, 95 S.Ct. at 1001. Under the objective standard, "[an] official, even if he is acting in the sincere subjective belief that he is doing right, loses

his cloak of qualified immunity if his actions contravene 'settled indisputable' law." *Bogard v. Cook,* 586 F.2d 399, 411 (5th Cir.1978).

There appears to be no dispute that defendants were acting within the scope of their discretionary authority in terminating plaintiff. Defendants therefore contend they are entitled to summary judgment on this issue, because (1) plaintiff has come forward with no evidence placing the subjective good faith of defendants in question and (2) defendants had no reason to believe their termination of plaintiff would violate his constitutional rights so long as they did not disclose any reasons for the discharge.

Without reaching the objective prong of the test, the Court is unable to agree that defendants have established subjective good faith as a matter of law. Plaintiff has alleged a conspiracy to terminate him and thereby stigmatize his professional reputation. If established at trial, this would certainly negate any claim of subjective good faith. Because the Court has already found that the conspiracy allegations must proceed to trial, defendants' good faith immunity defense is likewise inappropriate for disposition on a motion for summary judgment.

## II. *Substantive Due Process*

In Count Three of his complaint plaintiff asserts a substantive due process claim under the Fourteenth Amendment, alleging that his termination was arbitrary, capricious and unreasonable. This claim must fail, because it is well settled law that the reasons for an untenured state employee's discharge are not subject to federal judicial review absent a claim that such reasons were constitutionally impermissible:

> In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood, supra,* 426 U.S. at 350, 96 S.Ct. at 2080.

The case of *Thompson v. Gallagher,* 489 F.2d 443 (5th Cir.1974), cited by plaintiff, does not support his claim. As the Fifth Circuit recently noted in reviewing the *Thompson* decision, even termination of employment in violation of state law does not by itself rise to the level of deprivation of constitutional rights. *Jackson v. Stinchcomb,* 635 F.2d 462, 468 (5th Cir.1981). Accordingly, plaintiff's claim that his termination was arbitrary, capricious and unreasonable does not state a cause of action under the Fourteenth Amendment and defendants' motion for summary judgment as to Count Three of the complaint must be GRANTED.

## III. *Constitutionality of Ga.Code Ann. § 99–3502*

Plaintiff asks this Court to declare unconstitutional Ga.Code Ann. § 99–3502 on the grounds that it requires the Governor to appoint to the defendant BHR only those doctors who are nominated by a nominating commission, half of whose members are selected by the Medical Association of Georgia, a private organization. Plaintiff does not allege that this statute violates any *federal* constitutional guarantee but relies on the case of *Rogers v. Medical Association of Georgia,* 244 Ga. 151, 259 S.E.2d 85 (1979), which held a similar statute to be violative of the Georgia constitution. Thus this Count alleges a purely state law claim and is cognizable in this Court only under the doctrine of pendent jurisdiction.

In order to exercise pendent jurisdiction over such a state law claim, this Court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Even when these two criteria are satisfied, thus establishing the power to exercise pendent jurisdiction, the decision whether to exercise pendent jurisdiction is within the discretion

of the Court. *United Mine Workers v. Gibbs, supra.*

▮ The only link that plaintiff asserts between § 99–3502 and the other allegations on which this action is based is that defendants Edwards and Ermutlu probably "saw no serious objection to their delegation of substantial influence . . . to GARC, since an identical private association controlled five seats on the Board which set policy for the Department." Plaintiff's Brief in Opposition to BHR's Motion for Summary Judgment at 3. Defendant BHR is not alleged to have played any role in the termination of plaintiff and is not named in any of the other counts of plaintiff's complaint. In this situation the Court finds that it does not have pendent jurisdiction over Count Four of the complaint, because the state law claim does not share a "common nucleus of operative fact" with plaintiff's federal claims. Even if pendent jurisdiction existed in this case, the Court would choose not to exercise it, because a decision on the state law claim asserted in Count Four is completely unnecessary to a resolution of plaintiff's other claims.

Accordingly, Count Four of plaintiff's complaint is hereby DISMISSED and defendant BHR is DISMISSED as a party to this action.

## IV. Defamation Claims

### A. GARC's Report

In Count Five of his complaint, plaintiff alleges that he was libeled by GARC's publication on November 9, 1981, of its report concerning abuse at GRC.[2] Defendant GARC contends that this claim must fail as a matter of law.

▮ There is no dispute that plaintiff is a public official who can recover damages in a defamation action only upon a showing that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). In addition, actual malice must be shown by "clear and convincing" evidence. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). Defendant contends that plaintiff has not presented sufficient evidence to avoid summary judgment on the issue of actual malice. However, the Court is mindful of the Chief Justice's recent observation in *Hutchinson v. Proxmire,* 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411 (1979), that "[t]he proof of actual malice calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition." Accepting the plaintiff's version of disputed facts, the Court is not convinced that "no reasonable jury could find with convincing clarity that [the defendant] acted with actual malice" in the constitutional sense. *Yiamouyiannis v. Consumers Union of the United States, Inc.,* 619 F.2d 932, 940 (2d Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980).

The Court is also not convinced that GARC's report is sufficiently unambiguous on its face to preclude a finding of libel by innuendo. While it may be difficult for plaintiff to show that a fair and reasonable reading of the document as a whole defames him by innuendo, sufficient doubt remains in the Court's mind on this issue to preclude disposition of the claim on a motion for summary judgment.

Accordingly, defendant GARC's motion for summary judgment as to Count Five of the complaint is DENIED.

### B. Defendant Edwards' Statements

▮ Count Six of plaintiff's complaint alleges that he has been slandered by innuendo by certain statements made by defendant Edwards.[3] Defendant contends, *in-*

---

**2.** In his briefs plaintiff also has raised allegations that GARC published other statements that were libelous. However, these allegations have not been made part of plaintiff's complaint and the Court will therefore not consider them.

**3.** Plaintiff also alleges in his affidavit at least one slanderous statement by defendant Ermut-

*ter alia,* that plaintiff has not come forward with any admissible evidence of such statements. Plaintiff's brief filed in opposition to defendant's motion for summary judgment includes an affidavit containing quotations from newspaper articles attributing statements to defendant as well as attachments consisting of copies of these articles. Affidavits in support of or in opposition to summary judgment must set forth facts that would be admissible in evidence, and hearsay evidence in such affidavits is entitled to no weight. Fed.R.Civ.P. 56(e); *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539 (5th Cir.1980). The contents of newspaper articles are not admissible to demonstrate the truth of the statements made therein, including that defendant made the statements attributed to him. *Id.* at 556. Defendant has moved that the hearsay portions of plaintiff's affidavit be stricken, and he also opposes plaintiff's proposed amendment to his complaint that would add two references to newspaper articles to Count Six of the complaint.

 Plaintiff has submitted no admissible evidence in opposition to defendant's motion for summary judgment on his slander claims. Accordingly, the Court is inclined to grant defendant's motions with respect to Count Six. However, in the interests of justice, the Court will give plaintiff a further opportunity to present admissible evidence in support of his slander claims against defendant Edwards. The Court will DEFER ruling on defendant's motion for summary judgment with respect to Count Six, as well as the motion to strike and plaintiff's motion to amend his complaint. Plaintiff shall have 15 days from the date of this order to submit further affidavits or other admissible evidence, accompanied by brief, in support of Count Six of his complaint. Defendants shall have 10 days thereafter to file a response.

### V. *Intentional Infliction of Emotional Distress*

Count Seven of plaintiff's complaint alleges a state law tort claim for intentional infliction of emotional distress arising out of defendants' conspiracy to terminate plaintiff from his position at GRC. Defendants have responded that no state law cause of action can arise from plaintiff's termination, because plaintiff was legally terminable at will. They rely on *Taylor v. Foremost-McKesson, Inc.,* 656 F.2d 1029, 1032 (5th Cir.1981) (Unit B) (applying Georgia law), which held that plaintiff's claims of wrongful discharge and conspiracy to procure a wrongful discharge were precluded under Georgia law because defendants had absolute authority to terminate him. Defendants also cite the following language from *Runyan v. Economics Laboratory, Inc.,* 147 Ga.App. 53, 54, 248 S.E.2d 44 (1978): "It is the undisputed law of this state that where an employee's employment is terminable at will, the employer with or without cause and regardless of its motives, may discharge the employee without liability."

 In his opposition to the motion for summary judgment on this count, plaintiff does not address defendants' contentions. Rather, he argues that compensation for his emotional distress, as well as exemplary damages, may be recovered under his § 1983 claims. Plaintiff is correct that he may recover both compensatory and punitive damages under § 1983.[4] *Carey v. Piphus,* 435 U.S. 247, 255–56 & n. 11, 98 S.Ct. 1042, 1048 & n. 11, 55 L.Ed.2d 252 (1978). However, the Court agrees with defendants that plaintiff has no cause of action under state law for intentional infliction of emotional distress. Accordingly, defendants' motion for summary judgment on Count Seven of the complaint will be GRANTED.

lu, but his complaint alleges no cause of action against Ermutlu on this ground.

**4.** Defendants Edwards and Ermutlu have requested that plaintiff's claim in his brief for punitive damages under § 1983 be stricken on the grounds that this alteration of Count Seven several months after the New Case Statement has surprised and prejudiced them. This request is without merit, because plaintiff expressly stated in the New Case Statement that he was seeking exemplary damages under Counts One and Two (§ 1983 claims). New Case Statement at 4.

## VI. *Motion in Limine*

Defendants have moved for leave to file a motion in limine. Plaintiff opposes the motion. There is no need for defendants to obtain leave to file a motion in limine, but since they have so moved the motion is GRANTED.

## SUMMARY

In sum, defendants' motions for summary judgment are GRANTED as to Counts One, Three and Seven of the complaint. Count Four of the complaint is DISMISSED, and defendant Board of Human Resources is DISMISSED as a party to this suit. Defendants' motions for summary judgment are DENIED as to Counts Two and Five of the complaint. Ruling is DEFERRED on defendants' motion for summary judgment as to Count Six of the complaint, as well as on plaintiff's motion to amend Count Six and defendants' motion to strike portions of plaintiff's affidavit and exhibits. Plaintiff shall have 15 days to file further affidavits or other admissible evidence in support of his claim in Count Six and defendants shall have 10 days to respond thereto. Defendants' motion for leave to file a motion in limine is GRANTED.